IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ESTATE OF GUNTER SIGMUND )
ELKAN, )
 )
        Plaintiff, ) Case No. 04-1344-KI
 )
  vs. ) OPINION AND ORDER
 )
HASBRO, INC., and its wholly-owned )
subsidiary MILTON BRADLEY )
COMPANY, )
 )
        Defendants. )

    Roy B. Thompson
    Thompson Borgrán, P.C.
    15938 S. W. Quarry Rd., Suite B-6
    Lake Oswego, Oregon 97035

        Attorney for Plaintiff

    Suzanne C. Lacampagne
    Kieran J. Curley
    Miller Nash LLP
    3400 U. S. Bancorp Tower
    111 S. W. Fifth Avenue
    Portland, Oregon 97204-3699

Jonathan E. Moskin
White & Case LLP
1155 Avenue of the Americas
New York, New York 10036

      Attorneys for Defendants

KING, Judge:

Plaintiff, the Estate of Gunter S. Elkan, brings this action against Hasbro, Inc. alleging that Hasbro's game Stratego infringes the copyright Elkan obtained in 1948 for his game of Strategy. Hasbro contends that it is not liable for copyright infringement for several reasons. First, Hasbro claims that Stratego was independently developed a few years earlier than Strategy, in the Netherlands. Second, Hasbro argues that plaintiff's copyright has expired. Hasbro raises some additional arguments, including laches. Before the court is Hasbro's Motion for Summary Judgment (#40). For the reasons below, I grant the motion and dismiss Elkan's claim.

## FACTS

I will strike some exhibits because they are relevant to the issues before the court but are either unauthenticated or contain hearsay: Moskin Decl. Ex. D (newspaper article) and Thompson Decl. Ex. K (web site page), Ex. O (web site pages), and Ex. P (web site pages). There are a few other exhibits with similar problems but because these exhibits only provide background information on Elkan which is not directly relevant to the issues before me, and the truthfulness does not appear to be disputed, I decline to strike them.

I.    <u>Elkan and Strategy</u>

Elkan was imprisoned in a concentration camp for two days because he allegedly ran a Boy Scout troop in opposition to the Hitler Youth Movement. His father freed him with the help

of German Army officers and sent him to live in London. Elkan emigrated to Canada in 1940 and was placed in an internment camp during the war. Elkan became a citizen of Canada in May 1947 and a citizen of the United States in 1966.

The Elkan heirs, his children and stepchildren, all tell similar stories. The heirs were 8, 15, 18, and 21 years old when Elkan died. They do not remember conversations between their parents about either Stratego or Strategy but remember "family lore" that Elkan was the creator of Stratego.[1] The heirs describe Elkan as a very private person who did not share his involvement in the Holocaust with them. They did not know that Elkan's family origins were Jewish, that he had been in a concentration camp, or that he was interned in Canada in 1940. One heir, Carol Laning, was told by her mother, without further detail, that Elkan had been picked up by the Gestapo and his family had escaped from Nazi Germany.

Another heir, Heidi Cox, remembers conversations between her mother and siblings about how Elkan was the creator of Stratego. Cox does not recall if the precise reference was to Strategy or Stratego. Cox first learned of Elkan's World War II history in 1999 from her Canadian cousins. She was so amazed that she began to investigate Elkan's Jewish heritage. Cox has learned that her grandfather, Gunter Elkan's father, had chemical patents and significant real estate holdings in Germany that were appropriated by the Nazis.

In 1948, Elkan registered a copyright in the United States for the Strategy rules pamphlet. The registration form states that the document was published in the United States on May 25, 1948. This copyright was not renewed prior to its expiration in 1976. Elkan also registered a copyright for Strategy in Canada in 1948. The Canadian registration also states that the first date

---

[1] And also the game Battleship.

of publication was May 25, 1948 in Vancouver, British Columbia, Canada, where Elkan lived at the time.

Cox uncovered Elkan's copyright registrations for Strategy in the United States and Canada. None of the heirs knew of Elkan's copyright in Strategy until about two years ago when Cox told them.

On July 7, 1948, Robert Norton, Chairman, Research Committee, Milton Bradley, wrote Elkan to acknowledge receipt of his game Strategy. On July 20, 1948, Norton wrote Elkan's father to return the copy of Strategy. Norton stated that he had advised Gunter Elkan that the game had merit and played well but the company rejected it because that type of game was not of paramount interest.[2]

On June 29, 1949, Elkan wrote Parker Brothers about Strategy and offered to send a copy. Elkan stated that he had tested the game over a period of several years before he applied for a copyright in Canada and the United States.

Paul Vanasse, Director of Intellectual Properties of Hasbro, states that he and others in Hasbro's Legal Department searched for and confirmed that Hasbro has no records of the employment of Robert Norton, no records of the Research Committee referenced in Norton's letter, and no records of Elkan's idea submission.

---

[2] The facts in this paragraph and the next are drawn from documents filed by plaintiff but not properly authenticated. If a document is authenticated by personal knowledge, rather than under Fed. R. Evid. 901 or 902, the document must be attached to an affidavit from an affiant through whom the exhibit could be admitted into evidence. Orr v. Bank of America, NT & SA, 285 F.3d 764, 774 (9th Cir. 2002). In this case, for example, that could be the affidavit from an heir who discovered the letters in Elkan's personal effects after his death. I will rely on the documents here to give plaintiff the benefit of every inference.

II.     Mogendorff and Stratego

Jacques Johan Mogendorff ("grandson"), a citizen and resident of the Netherlands, is the grandson of Jacques Johan Mogendorff ("Mogendorff"). The grandson, who was born in Israel in 1954, personally knew Mogendorff before his death in 1961. The grandson had no affiliation with Hausemann and Hötte or Hasbro until Hausemann and Hötte contacted him earlier this year to get information about Mogendorff.

According to the grandson, Mogendorff was born in the Netherlands in 1898 and had two sons, now both deceased. Mogendorff lived his entire life in various cities in the Netherlands, with one exception, and worked as a sales representative of Kaufmann, a company engaged in the international trade of hides. In 1943, Mogendorff and his family, including his two sons who were in their late teens and early twenties, were deported to the concentration camp at Westerbork in the Netherlands and again deported in June 1944 to the concentration camp at Bergen Belsen in Germany. The Mogendorff family was liberated from Bergen Belsen on April 13, 1945, and then recovered from serious illness due to maltreatment there.

The family understood, and the grandson was told by his father and other family members, that Mogendorff developed Stratego while sitting at the kitchen table with his two sons when they were children. The grandson does not know if this took place before or during World War II. The grandson never heard of Gunter Elkan, or his game Strategy, until as a result of this litigation.

Wilfred Marcus Horn is a game inventor and collector in the Netherlands who appraised Hausemann and Hötte's game collection in the late 1970s for insurance purposes. Based on Horn's work with Hausemann and Hötte and information he obtained from a former director and

shareholder, A.J. de Graaf, now deceased, Horn states that Mogendorff developed Stratego in the Netherlands during World War II. Horn has seen the April 20, 1942 Netherlands trademark registration for the mark "Stratego" obtained by the Dutch company Van Perlestein & Roeper Bosch NV ("Van Perlestein"). The trademark registration was in force until 1958 when the license was granted to Hausemann and Hötte. Based on the date of the trademark registration, Horn concludes that Mogendorff must have developed Stratego at least as early as April 1942.

Horn learned from de Graaf that Mogendorff licensed Stratego to a Dutch printing company Smeets and Schippers between 1946 and 1951. Horn owns two of the Smeets and Schippers Stratego games manufactured in 1946 and 1947. Horn dated his copies of the game based on a paper rationing distribution number with a "K" prefix. K numbers were used on paper products between 1942 and 1946. Horn also relies on the grammar used in the game rules. The Netherlands officially changed the rules of spelling and grammar in February 1947. Horn's games both contain rules written with the older form of the grammar, indicating to him that they were manufactured prior to the changeover in February 1947.

Roelof Eefting, another Dutch collector of Stratego games, has three versions of the games published by Smeets and Schippers. Based on the grammar and the use, or lack of, K numbers, Eefting dates one of his games to the end of 1946 and the other two to 1947 or 1948.

Ben Leijten, of the Product Development Department of Hausemann and Hötte, provides additional information on the licensing arrangements. Hausemann and Hötte obtained a license for Stratego from Mogendorff with respect to Europe in 1958 and with respect to the rest of the world in 1959. Hausemann and Hötte sublicensed the game to Milton Bradley in 1961. After

Mogendorff died in 1961, Hausemann and Hötte purchased the copyright to Stratego, as well as the United States trademark Mogendorff applied for in 1958, from his heirs.

Leijten describes Hausemann and Hötte company records which have been provided to the court with an English translation. In 1958, Van Perlestein wrote the Dutch government trademark office to delete the registration of the mark Stratego "in our name on behalf of" Mogendorff. Leijten Decl. Ex. E. Just after Mogendorff's death in 1962, his attorney, D.J. Veegens, wrote the Dutch United Office of Patents to explain that the old registration of the trademark Stratego in 1942 was in the name of Van Perlestein as a result of the German occupation. Leijten explains that this means that Mogendorff, as a Jew, could not apply to register the mark in his own name.

Vanasse states that Milton Bradley entered into a licensing agreement with Hausemann and Hötte in 1961 which allows Milton Bradley, and now Hasbro after its acquisition of Milton Bradley in 1984, to manufacture and sell Stratego. Beginning in 1961, Milton Bradley began registering copyrights in Stratego's cover, game board, directions, and cover label with the United States Copyright Office. The oldest registration applications state that the copyrighted material was first published on February 17, 1961, in the United States.

Milton Bradley's 1961 catalog describes Stratego as "the American version of the game now popular in Europe." Stark Decl. Ex. B. Hasbro has sold approximately 10 million copies of Stratego in the United States under the licensing agreement. Milton Bradley and Hasbro have paid over $5 million in royalties to Hausemann and Hötte during the last 45 years.

Wolter Wefers Bettink is an attorney in the Netherlands who practices copyright law. Bettink explains that under the Dutch Copyright Act of 1912, there is no registration system for

copyrights in the Netherlands. Instead, a copyright in a work originates by the act of creating the work and subsists for 70 years from January 1 after the year in which the author died. Based on this law, Bettink states that the Dutch copyright in Stratego subsists from the day the game was first expressed in a form that may be perceived by the senses and will remain valid until 2031.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

Hasbro notes that the copyright laws only prohibit actual copying. If an accused work was created independently, it does not infringe a copyrighted work, no matter how great the similarity between the two. Hasbro contends that Mogendorff created Stratego in 1942, lived his entire life in the Netherlands except for internment in a concentration camp, and had no access to Strategy prior to Stratego's invention. Hasbro discount's plaintiff's explanation of how Elkan published Strategy prior to 1948 because the explanation contradicts the written records which document Strategy's copyright. Hasbro thus argues that Stratego was independently created from Strategy and does not infringe Strategy's copyright.

Plaintiff argues that an unknown person created Stratego in the Netherlands by either copying a French game called L'Attaque or acquiring a license from the L'Attaque copyright holders to manufacture it in the Netherlands. Plaintiff denies that Mogendorff created anything but instead acquired the rights to Stratego from Van Perlestein & Roeper Bosch in 1958 to manufacture the game in the Netherlands. Based on this theory, plaintiff contends there is a factual issue on whether the game Stratego existed in 1942 because there is no documentation from the 1940s or 1950s showing dates of publication or copyright notice. Plaintiff notes that Elkan submitted Strategy to Milton Bradley in 1948, who therefore had access to it and could have copied the game. Plaintiff discounts Hasbro's reliance on the 1942 trademark of the word Stratego and the manufacturing numbers.

In reply, Hasbro argues that possible third-party rights in L'Attaque are irrelevant to the question of whether Mogendorff copied Stratego from Strategy. It contends that evidence of Milton Bradley's bare corporate receipt of Strategy in 1948, without any actual nexus between specific individuals who saw Elkan's submission and the individuals who actually launched Stratego twelve years later, does not raise a factual issue on access. Hasbro also notes the license fees Milton Bradley paid to Hausemann and Hötte and contends that this removes any possible financial incentive to copy Strategy.

"[T]he originality necessary to support a copyright merely calls for independent creation, not novelty. . . . The protection is thus against copying – not against any possible infringement caused when an independently created work coincidentally duplicates copyrighted material." Roth Greeting Cards v. United Card Co., 429 F.2d 1106, 1109-10 (9th Cir. 1970).

A copyright plaintiff must prove: (1) ownership of the copyright; and (2) infringement, namely, that defendant copied protected elements of plaintiff's work. Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481 (9th Cir. 2000), cert. denied, 531 U.S. 1126 (2001). If there is no direct evidence of copying, proof of infringement requires fact-based showings that defendant had access to plaintiff's work and that the two works are substantially similar.

> Proof of access requires an opportunity to view or to copy plaintiff's work. This is often described as providing a reasonable opportunity or reasonable possibility of viewing the plaintiff's work. We have defined reasonable access as more than a bare possibility. Nimmer has elaborated on our definition: "Of course, reasonable opportunity as here used, does not encompass any bare possibility in the sense that anything is possible. Access may not be inferred through mere speculation or conjecture. There must be a reasonable possibility of viewing the plaintiff's work – not a bare possibility." . . .
>
> Circumstantial evidence of reasonable access is proven in one of two ways: (1) a particular chain of events is established between the plaintiff's work and the defendant's access to that work (such as dealings with a publisher or record company), or (2) the plaintiff's work has been widely disseminated.

Id. at 482 (quoting 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 13.02[A], at 13-19) (internal citations and other quotations omitted).

Bare corporate receipt of a copyrighted work, "without any allegation of a nexus between the recipients and the alleged infringers, is insufficient to raise a triable issue of access." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 53 (2nd Cir. 2003) (receipt by a corporate employee who had no connection, even through an intermediary, with the alleged infringers did not prevent summary judgment based on lack of access to allow copying).

There is no evidence that Mogendorff copied Elkan's game. The two men led lives in different countries other than Mogendorff's imprisonment in a German concentration camp in

1944.  Elkan had emigrated to Canada in 1940, however.  There is also no evidence of an intermediary between them.

Thus, Elkan's claim rests on Milton Bradley copying Strategy when Elkan provided a copy to the company for review in 1948.  There are several problems with this theory.

Milton Bradley did not publish Stratego until 1961.  Thus, Milton Bradley would have had to put its knowledge of Strategy "on the shelf" for thirteen years if it copied Elkan's game.  There is no evidence to establish that Milton Bradley's knowledge of Strategy traveled beyond Robert Norton and the Research Committee to the part of the company that puts new games into production.  Moreover, Hasbro has proof supporting its chain of title from Mogendorff to Hausemann and Hötte to Milton Bradley, with the rights taking side trips to Van Perlestein and Smeets and Schippers.  There would be no need for Milton Bradley to license Stratego if it was copying from Elkan's Strategy.

Plaintiff has failed to raise a factual issue that the "bare corporate receipt" in 1948 gave the infringers within Milton Bradley access to Strategy.  No reasonable jury could find that Hasbro copied Stratego from Elkan's Strategy.  Accordingly, I grant summary judgment and dismiss Elkan's copyright infringement claim.

The parties dispute whether plaintiff sought damages for infringement of both the American and Canadian copyrights for sales in both countries.  The various complaints' jurisdiction paragraphs cite to the statutes in both countries but the prayer for relief only seeks damages under the American statute.  Plaintiff has pursued discovery concerning Canadian sales.  There is no need for me to interpret the Second Amended Complaint because my conclusion that

Hasbro did not copy Strategy from Elkan would have preclusive effect in a suit seeking damages for sales in Canada.

I decline to address Hasbro's other arguments, including the one based on the expiration of the copyright.

**CONCLUSION**

Hasbro's Motion for Summary Judgment (#40) is granted. Elkan's claim is dismissed with prejudice. Hasbro filed a counterclaim seeking a declaratory judgment that Hasbro is the rightful user and owner of all rights in and to the game Stratego. That relief goes beyond my finding concerning Elkan and Strategy. Hasbro is asked to inform the court within two weeks whether it intends to prosecute the counterclaim.

IT IS SO ORDERED.

Dated this   18th   day of November, 2005.

                                        /s/ Garr M. King
                                        Garr M. King
                                        United States District Judge